**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Terry Lynn Puckett,

    Plaintiff,                                    Case Action No.: 1:10-cv-528

    v.                                         Judge Michael R. Barrett

Commissioner of Social Security,

    Defendant.

## ORDER

This is a Social Security appeal brought under 42 U.S.C. § 405(g). Before the Court is Magistrate Judge Karen L. Litkovitz's August 11, 2011, Report and Recommendation ("Report") (Doc. 8).[1] The Report recommends that this matter be reversed and remanded for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g). (Doc. 8, 33.)

The parties were given proper notice under Rule 72(b) of the Federal Rules of Civil Procedure including notice that the parties would waive further appeal if they failed to file objections to the Report in a timely manner. *See United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981).[2] Defendant filed timely Objections to the Report (Doc. 8), and Plaintiff filed a Response (Doc. 10).

For the reasons stated below, the Court overrules Defendant's Objections and the Report is ADOPTED. Accordingly, the Commissioner's decision is REVERSED and REMANDED.

---

[1] All Court document citations are to Docket Entry numbers.

[2] A notice was attached to the Report regarding objections. (Doc. 8, 34.)

1

**I.	Background**

Plaintiff filed for Supplemental Security Income benefits under Title XVI of the Social Security Act on November 22, 2005.[3]  (Doc. 1 ¶ 3; Tr. 16.)  Plaintiff's claim was denied initially and upon reconsideration.  A hearing before an Administrative Law Judge ("ALJ") and a review by the Appeals Council made the denial of benefits final. (Doc. 1 ¶ 5; Tr. 16.)  The Report accurately details the remainder of the facts and procedural history of this case.  (*See* Doc. 8, 1–2, 9–16.)  Accordingly, the Report's statement of facts and procedural history are adopted in full here.

The Report recommends that the ALJ's finding that Plaintiff is not disabled should be reversed and the matter should be remanded for further proceedings.  (Doc. 8, 33.)  Defendant maintains the following objections to this recommendation: (1) The magistrate judge erred by finding that the ALJ gave an inadequate explanation for giving little weight to Dr. Tadepalli's opinions (Doc. 9, 1–2); (2) the magistrate judge erred by finding that the ALJ failed to consider the impact of all the limitations noted by Dr. Chiappone (Doc. 9, 3); and (3) the magistrate judge erred in recommending that the case be remanded for further consideration of whether the evidence meets Listing 12.04(C)(2) and (3) (Doc. 9, 3–4).[4]  Each objection is addressed seriatim.

**II.	Analysis**

   **A.	Standard of Review**

When objections are received to a magistrate judge's report and

---

[3] Part 416 of the Social Security Administration regulations relate to title XVI of the Social Security Act. 20 C.F.R. § 416.101.

[4] Note that Defendant did not organize its arguments as distinctly as the Court has listed them here.  (*See* Doc. 9.)  But for the sake of addressing everything thoroughly and efficiently, this is how the Court organizes its analysis.

recommendation on a dispositive matter, the district judge "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). After review, the district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.*; *see also* 28 U.S.C. § 636(b)(1). General objections are insufficient to preserve issues for review; "[a] general objection to the entirety of the magistrate's report has the same effects as would a failure to object." *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

The Court's review of the Social Security Commissioner's decision is limited to determining whether the findings are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 521 (6th Cir. 2008) (internal quotations omitted).

The substantial evidence standard presupposes that "there is a zone of choice within which the [ALJ] may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (internal citations omitted) (*quoting Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). This "zone of choice" includes resolving conflicts in the evidence and deciding questions of credibility. *Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987). Consequently, this Court should defer heavily to such

findings. *See Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir. 1994). If substantial evidence supports the ALJ's finding of non-disability, that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky*, 35 F.3d at 1035 (*citing Mullen*, 800 F.2d at 545). However, even where there is substantial evidence, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r of Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (*quoting Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

**B. First Objection**

Defendant's first objection maintains that the magistrate judge erred by finding that the ALJ gave an inadequate explanation for giving little weight to Dr. Tadepalli's opinions. (Doc. 9, 1–2.) The Report's initial conclusion is that Dr. Tadepalli was "a treating physician whose opinion deserved special weight under the Social Security regulations." (Doc. 8, 19.) Defendant objects to this conclusion. (Doc. 9, 1–2.) Defendant argues that the Report erred where it found Dr. Tadepalli to be a treating source "based on the assumption that Dr. Tadepalli had access to and reviewed years' worth of treatment notes." (Doc. 9, 2.) Defendant characterizes this as a "leap of faith." (Doc. 9, 2.)

The Regulations state that "[t]reating source means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or had had, an ongoing treatment relationship with you." 20 C.F.R. § 416.902. Thus, to be a "treating source,"

4

an "ongoing treatment relationship" is required. *Id.* The Regulations further state that "we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical conditions(s)." 20 C.F.R. § 416.902; *See also Smith v. CSS*, 482 F.3d 873, 876 (6th Cir. 2007) ("A physician qualifies as a treating source if the claimant sees her with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. A physician seen infrequently can be a treating source if the nature and frequency of the treatment or evaluation is typical for the condition.")

The record contains only one treatment note showing contact between Plaintiff and Dr. Tadepalli. (Doc. 8, 18; Tr. 249–50.) The Report recognized and dealt with this point as follows:

> Although there is only one progress note showing an examination by Dr. Tadepalli in the record, plaintiff has been treated at CORE Behavioral Health (now Centerpoint Health) since 2005. Thus, Dr. Tadepalli would have had access to progress notes of not only the previous treating doctor (Dr. Rosenthal), but the many years of progress notes from Nurse Practitioner Wheeler in assessing plaintiff's mental functional capacity. This would give Dr. Tadepalli an insight into plaintiff's mental impairments and functioning that a one-time examining physician would not possess. *See Walker* v. *Secretary of Health and Human Services,* 980 F.2d 1066, 1070 (6th Cir. 1992) (treating physician is generally more familiar with patient's condition than are other physicians). In addition, the ALJ's decision appears to recognize Dr. Tadepalli as a treating source. *See* Tr. 23 (stating that while Dr. Tadepalli finds plaintiff is not using alcohol and takes medication as prescribed, plaintiff has not been truthful with his "treating sources" about use and compliance). The Court therefore rejects the Commissioner's contention that Dr. Tadepalli was not a treating physician whose opinion

5

>> deserved special weight under the Social Security regulations.

(Doc. 8, 18–19.) The Court agrees with this analysis because Plaintiff saw Dr. Tadepalli "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [Plaintiff's] medical condition(s)." See 20 C.F.R. § 416.902. As the Report implicitly recognized, Plaintiff was not so much a patient of Dr. Tadepalli or Dr. Rosenthal, as he was a patient of CORE Behavioral Health (and later Centerpoint Health as it became known in 2008). This Court does not believe that Plaintiff should be penalized because he was forced to receive his health care from a free-clinic type facility where physicians come and go with greater frequency than in a privately run facility. The Report is correct that Dr. Tadepalli saw Plaintiff infrequently, but given the facts of this case, their treatment relationship was sufficient to classify Dr. Tadepalli as a treating source.[5]

With it established that Dr. Tadepalli was a treating source, the Report goes on to conclude that "[b]y failing to consider the factors listed in 20 C.F.R. § 416.927(d)(2) in determining the weight to give Dr. Tadepalli's opinions, the ALJ's rejection of the treating physician's RFC assessment is not supported by substantial evidence." (Doc. 8, 25.) The Report continues, "[t]he ALJ's decision in this respect constitutes legal error warranting a reversal and remand of this case for reconsideration of plaintiff's RFC, with proper analysis of the weight to be given Dr. Tadepalli's residual functional capacity questionnaire consistent with the treating source regulation." (Doc. 8, 25.) The Court

---

[5] A more formalistic approach could reach the opposite conclusion, so this Court reviews its reasoning on this issue here: (1) the ALJ's decision implicitly recognized Dr. Tadepalli as a treating source (see Tr. 23); (2) the frequency of contact was consistent with accepted medical practice in a free-clinic type facility; (3) the frequency of contact was consistent with accepted medical practice for the type of evaluation required for Plaintiff's specific mental-health condition; and (4) Dr. Tadepalli's opinion was based on his and Plaintiff's ongoing relationship with CORE Behavioral Health (and later Centerpoint Health).

6

sees no error in this analysis.

Defendant's next argument within its first objection maintains that because the Report did not address evidence that contradicted Dr. Tadepalli's opinion the Report is incorrect where it suggests that other evidence supported Dr. Tadepalli's opinion. (Doc. 9, 2.) The Report held that the ALJ properly considered the inconsistencies between Dr. Tadepalli's two reports, but that such inconsistency is not sufficient reason to entirely reject his opinion. (Doc. 8, 23–24) (*quoting* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *4 ("[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected.") and *Blakley v. CSS*, 581 F.3d 399, 408 (6th Cir. 2009) ("Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927."). The Report made no error here because, as it concludes, the ALJ's decision did not properly analyze the relevant factors in determining the weight that Dr. Tadepalli's opinion deserved. (Doc. 8, 24.) Furthermore, the fact that there may have been inconsistencies in Dr. Tadepalli's opinion does not mean that other evidence did not support it. As the Report analyzes, other evidence did in fact support Dr. Tadepalli's opinion. (Doc. 8, 24–25.)

Defendant next argues that the Report was incorrect for chiding the ALJ for discrediting Dr. Tadepalli's opinion based on a determination of Plaintiff's credibility. (Doc. 9, 2.) Here, Defendant is referring to the fact that the ALJ discredited Dr. Tadepalli's opinion, in part, because Plaintiff has "repeatedly given inconsistent statements about the nature, frequency, and severity of his substance use." (Tr. 23.)

7

As Defendant states, "The ALJ . . . concluded that a doctor's opinion based largely upon allegations from Plaintiff was susceptible to attack," because Plaintiff was "not a truthful individual." (Doc. 9, 2.) In this regard, the Report concludes as follows:

> While the ALJ was certainly free to consider plaintiff's inconsistent statements and history of alcohol abuse in assessing plaintiff's credibility, the ALJ points to no evidence post-February 2006 showing any evidence of continued alcohol use which would affect Dr. Tadepalli's or Ms. Lockett's 2008 assessments two years after the last note of alcohol use. Therefore, the ALJ's reliance on 2006 evidence of substance abuse as a basis for discrediting the treating source opinions is without substantial support in the record.

(Doc. 8, 23.) The Court finds no error with this analysis, and Defendant presents no legal authority to support for its argument that "[t]his is an overly strict view of how a claimant's credibility is to be judged, and how it can affect an opinion." (Doc. 9, 2.) Defendant misses the Report's point here, which is that the ALJ's consideration of Plaintiff's credibility fails to consider the record as a whole. The ALJ focused on evidence of alcohol abuse prior to February 2006, but ignored evidence post-February 2006, thereby improperly weighing Dr. Tadepalli's 2008 assessment. (*See* Doc. 8, 22–23.)

Defendant's final argument within its first objection asserts that the Report "does not address the other components of the ALJ's recitation of Plaintiff's lack of compliance with 'treatment.'" (Doc. 9, 3.) Defendant argues that "the ALJ properly characterized the record—Plaintiff stopped going to Centerpoint Health regularly in June 2006, only went once in 2007, and returned in mid-2008—and this cuts against Plaintiff's claims of disabling mental impairment and Dr. Tadepalli's opinion." (Doc. 9, 3.) However, the ALJ never mentioned Plaintiff's Centerpoint Health attendance record. (*See* Tr. 16–25.)

8

Furthermore, this Court does not see where the ALJ ever discussed "other components" of lack of compliance, and Defendant fails to specifically point them out either with a correct citation or with examples. (*See* Tr. 16–25; *see* Doc. 9, 3.) The only compliance issues the ALJ discussed related to compliance with medication. (*See* Tr. 16–25; 22–23.) As to the issue of compliance with medication, the Report concludes that the ALJ only cited to two instances of alleged noncompliance (Doc. 8, 20), and that the ALJ incorrectly concluded that Plaintiff's symptoms were adequately managed when he was compliant with his medication (Doc. 8, 21.) The Report concludes that the "notes the ALJ cited as showing 'unequivocally' that plaintiff's symptoms are 'adequately managed' when he takes his medication (Tr. 22) actually reflect that plaintiff continued to experience severe impairments in his functioning while medicated." (Doc. 8, 21.) The Court sees no error here, and Defendant has demonstrated none.

Accordingly, Plaintiff's first objection—that the magistrate judge erred by finding that the ALJ gave an inadequate explanation for giving little weight to Dr. Tadepalli's opinions—is OVERRULED. The Report is ADOPTED in this respect.

**C.    Second Objection**

Defendant's second objection maintains that the Report is incorrect where it found that the ALJ failed to consider the impact of all the limitations noted by Dr. Chiappone. (Doc. 9, 3.) As the Report concludes, "to the extent the ALJ relied on the vocational expert's earlier testimony without accounting for the impact of moderate limitations in persistence and stress tolerance expressed by Dr. Chiappone on plaintiff's ability to work, the ALJ's vocational decision is not supported by substantial evidence." (Doc. 8, 29.) Defendant argues that this was mistaken because the "VE's testimony

9

was based on a hypothetical from counsel that was completely divorced from the substance of Dr. Chiappone's opinion." (Doc. 9, 3.) The Court has had great trouble following this argument because Defendant does not develop it properly.[6] (*See* Doc. 9, 3.) Regardless, even if Defendant's objection here is correct, that does nothing to change the Report's conclusion. This is so because the Report concludes that the ALJ's step-five analysis was deficient for several reasons (Doc. 8, 26–29), and Defendant only objects to one of those reasons (Doc. 9, 3.) Thus, even if Defendant's objection is well-taken, the Report's other reasons for concluding that the ALJ's step-five analysis was in error stand unchallenged.

Accordingly, Plaintiff's second objection—that the Report is incorrect where it found that the ALJ failed to consider the impact of all the limitations noted by Dr. Chiappone—is OVERRULED. The Report is ADOPTED in this respect.

### D. Third Objection

Defendant's third and final objection maintains that the magistrate judge erred in recommending that the case be remanded for further consideration of whether the evidence meets Listing 12.04(C)(2) and (3). (Doc. 9, 3–4.) Although the Court again has had trouble following this argument because Defendant does not develop it properly, Defendant appears to be arguing that the ALJ did not err because Plaintiff did not uphold his burden of proving all the elements of Listing 12.04C. (*See* Doc. 9, 3–4.) However, this argument ignores the fact that part of the reason why the Report concludes that this matter should be remanded for further proceedings is because "to the extent the ALJ required evidence showing plaintiff lived in a hospital, mental

---

[6] Defendant makes this situation worse by not citing to the part of the Report it is objecting to. (*See* Doc. 9, 3.)

institution, group home, or other such facility for an extended period of time, the ALJ erred as a matter of law and her Listing decision must be reversed." (Doc. 8, 32.) Defendant does not object to this conclusion. Thus, once again, even if Defendant's objection here is well-taken, the Report's other reason for remanding on this point stands unchallenged. (*See* Doc. 8, 29–32.)

Plaintiff's final objection—that the magistrate judge erred in recommending that the case be remanded for further consideration of whether the evidence meets Listing 12.04(C)—is OVERRULED. The Report is ADOPTED in this respect.

### III. Conclusion

Based on the foregoing, the Court overrules Defendant's Objections and the Report (Doc. 8) is ADOPTED in full. As the Report recommends (Doc. 8, 32–33), this matter is reversed and remanded under Sentence Four of § 405(g) for further proceedings consistent with this Order and with the Report, which includes a reassessment of the weight given to the treating-source opinions, reconsideration of whether Plaintiff meets or equals Listing 12.04(C), reconsideration of Plaintiff's RFC assessment, and vocational considerations consistent with this Order and the Report.

**IT IS SO ORDERED**.

*s/Michael R. Barrett*
United States District Judge